UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| TRENT MACKEY, JR. | CIVIL ACTION NO. 13-cv-4919 |
| VERSUS | SECTION "C" |
| FRANCIS JARROTT, ET AL | HON. HELEN BERRIGAN |

### Order and Reasons

Before the Court is defendants' Motion for Summary Judgment, plaintiff's Memorandum in Opposition, and defendants' Reply. Rec. Docs. 27, 33, 38. For the reasons discussed herein, the Court GRANTS defendants' Motion as to plaintiff's claim under 42 U.S.C. §1983. The Court declines to exercise jurisdiction over plaintiff's remaining state law claims.

I.    **Factual background**

This matter arises out of the arrest of plaintiff, Trent Mackey, Jr. on September 24, 2012 by the New Orleans Police Department ("NOPD"). On August 4, 2012, Nicholas Shatz ("Shatz") awoke from a nap and saw an unknown man inside his bedroom at 618 Broadway Street in New Orleans, Louisiana. Rec. Doc. 27-4. After the intruder fled, Shatz noticed he was missing two watches, his phone, and cash from his wallet. Rec. Doc. 27-5 at 21:13 – 22:12 and 28:13-20.

Shatz called the NOPD to report a burglary. *Id*. at 22:22-23:16. NOPD Officer Kevin Wheeler met with Shatz later that day. Rec. Doc. 27-3.

On August 6, Detective Francis Jarrott ("Jarrott") was assigned to investigate the case. Rec. Doc. 27-7 at 1. On or about September 12, 2012, Shatz saw an online news article reporting that Trent Mackey had been accused of a robbery that took place across the street from Shatz's home. The article included a photograph of Trent Mackey which Shatz says fit his recollection of the intruder he had seen on August 4. He contacted the police to notify them of the similarities. Rec. Doc. 33-4 at 31-32. Upon receiving word of Shatz's call, Jarrott telephoned Shatz and asked him to go to the Second District police station to review a photo lineup of possible suspects. Rec. Doc. 27-7 at 3. When Shatz went to the station on September 19, 2012, Jarrott presented him with six photographs of individuals with similar facial and physical characteristics, from which Shatz identified Mackey's photo. *Id*. Shatz then signed and dated the back of the photo he'd selected and wrote a brief statement about the person he had identified. Rec. Doc. 27-5 at 42. After the meeting, Jarrott contacted Tulane University Police Department and learned that Mackey did not have any scheduled class or football practice on the day of the burglary. Rec. Doc. 27-7 at 3.

On September 20, 2012, Jarrott applied for and received a warrant for Mackey's arrest. *Id.* On September 24, 2012, the Tulane University Police Department took Mackey into custody and immediately turned him over to the NOPD. Rec. Doc. 27-7 at 3. Following Mackey's arrest, Mackey's attorney, Richard Kohnke, contacted Shatz and discussed Mackey's arrest and Shatz's identification of Shatz in the photo lineup. Rec. Doc. 33-4 at 56–57. After their conversation, Shatz met again with Jarrott and stated that he had not expected that his identification would lead to Mackey's arrest, and that he estimated he was only 60 to 70 percent certain that Mackey was

the person he had seen in his apartment. Rec. Doc. 33-4 at 58–61. According to defendants, both a DNA test and a fingerprint test of samples taken from Shatz's stolen phone, which had been retrieved through a phone-tracking application, had proven inconclusive. Rec. Doc. 27-6, 27-11. On November 26, 2012, the District Attorney's Office refused the burglary charge against Mackey. Rec. Doc. 33-2.

On June 26, 2013, Mackey filed suit in this Court, bringing a claim against Jarrott in his individual capacity under 42 U.S.C. §1983 for violations of Mackey's Fourth and Fourteenth Amendment rights, as well as state law claims of false arrest, malicious prosecution, and intentional inflection of emotional distress. Rec. Doc. 1. Defendants now move for summary judgment on all claims. Rec. Doc. 33.

## II.     Standard of review

Summary judgment is proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A genuine issue of fact exists if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1996).

A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of '[discovery], together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the initial burden is met, the nonmoving party must "designate specific facts showing there is a genuine issue for trial" using evidence cognizable under Rule 56. *Id.* at 324. "[U]nsubstantiated assertions" and

"conclusory allegations" will not defeat a properly supported motion for summary judgment. *Hopper v. Frank*, 16 F.3d 92, 97 (5th Cir. 1994); *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 871-73 (1990). "If the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Anderson*, 477 U.S. at 249-50 (internal citations omitted). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

When reviewing a motion for summary judgment, a court must view the evidence and inferences drawn therefrom in the light most favorable to the non-moving party. *Daniels v. City of Arlington, Texas*, 246 F.3d 500, 502 (5th Cir. 2001). Summary judgment does not allow a court to resolve credibility issues or weigh evidence. *Int'l Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1263 (5th Cir. 1991).

### III. Law and Analysis

#### a. Section 1983 claim against Jarrott in his individual capacity

Defendants argue that Mackey's claim against Jarrott in his individual capacity must be dismissed, both because Jarrott had probable cause to arrest Mackey and because Jarrott is entitled to qualified immunity. The Court will first address whether Jarrott is entitled to qualified immunity.

Under Fifth Circuit law, a qualified immunity defense shields a government official from liability for damages based upon the performance of discretionary functions if the official's acts were objectively reasonable in light of then clearly established law. *Atteberry v. Nocona General Hosp.*, 430 F.3d 245, 253 (5th Cir. 2005). When a defendant invokes qualified immunity, the burden shifts to the plaintiff to show the inapplicability of the defense. The plaintiff may

overcome the defense by satisfying a two-prong test, first showing that the defendants committed a constitutional violation under current law, and, second, that the defendant's actions were objectively unreasonable in light of clearly established law at the time of the actions. *Id*. at 254.

  The Court finds that plaintiff has not overcome defendants' invocation of the defense of qualified immunity. Specifically, Mackey has not shown that Jarrott's actions were objectively unreasonable in light of clearly established law at the time of the actions. The United States Supreme Court extended qualified immunity to officers applying for a warrant of arrest in *Malley v. Briggs*, 475 U.S. 335, 344 (1986). In that case, the Supreme Court stated that "[o]nly where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Id*. (citation omitted). In *U.S. v. Garcia*, the Fifth Circuit held that the determination of whether probable cause existed "must be analyzed under the totality of the circumstances as to whether there is a fair probability that a crime occurred." 179 F.3d 265, 269 (5th Cir. 1999) (internal citations and quotations omitted). It elaborated that "a fair probability does not mean that a reasonable official would have thought it more likely than not that the defendant committed a felony." Rather, "fair probability" is "something more than a bare suspicion, but need not reach the fifty percent mark." *Id*.

  The Court finds that Jarrott's application for a warrant was not objectively unreasonable in light of clearly established law at the time of his actions. Courts in this jurisdiction have held that "[a] police officer has probable cause to arrest when, at the moment the decision is made, the facts and circumstances within her knowledge and of which she has reasonably trustworthy information would warrant a prudent person in believing that the suspect had committed or was committing an offense." *Covington v. Kemp*, Civ. A. No. 10-213, 2012 WL 2415188, *3 (S.D.Miss. 6/26/2012) (quoting *Fleming v. Livingston County, Ill.*, 674 F.3d 874, 878 (7th Cir.

2012)). Based on the facts and circumstances within Jarrott's knowledge at the time that he sought a warrant for Mackey's arrest, Jarrott's reliance on Shatz's identification and belief that probable cause for arrest existed was not unreasonable in light of clearly established law.

Jarrott and Shatz differ in several respects when recounting their interactions prior to Mackey's arrest. However, even viewing this evidence in the light most favorable to plaintiff, Jarrott's actions were not objectively unreasonable. Shatz's recollection of his conversations with the NOPD following the burglary is spotty. When asked at his deposition in November 2014 to recall his telephone conversation with Jarrott prior to the photographic lineup, Shatz stated:

> I don't remember a word of it other than the fact I just let them know what I told you essentially is that I was made aware of this article about Trent Mackey specifically being accused of a robbery. That robbery took place across the street from my house and [Mackey] looks similar to the individual that I believed robbed me, and so I thought that I would be doing myself an injustice not to try to connect the dots.

Rec. Doc. 33-4 at 34-35. Shatz relates that upon going to the police station, Jarrott presented him with six thumb-size photos and "asked me to point to the one that I believe robbed me." *Id*. at 38. Upon further questioning at his deposition, Shatz stated that he couldn't precisely recall Jarrott's instructions when presenting the photographers, but that he believed Jarrott told him to "point to the one that looks most like the individual who walked into [Shatz's] apartment." *Id*. at 40. After Shatz pointed to Mackey's photograph, Shatz signed and dated the back of the photograph and wrote, "Looks most similar to my memory. Skin tone, big build, shaved head." *Id*. at 41. According to Shatz, he had no recollection of making an assertion as to his level of certainty about whether the photo he pointed to was in fact the person who he had seen in his apartment. *Id*. at 41–42. As discussed above, Shatz later contacted Jarrott after Mackey's arrest and stated that he was only 60 to 70% certain that Mackey was the person he had seen in his apartment.

6

Jarrott's recollection of his interactions with Shatz come from several sources: a police report prepared on October 18, 2012, about a month after their first meeting; a deposition on November 20, 2014; and a sworn declaration dated December 2, 2014. According to the police report, Shatz received an email from Officer Wheeler on September 14, 2012, stating that "Nick Shatz [redacted] would like to speak to a detective about his burglary. He thinks a recently arrested Tulane football player is the perp. Can a detective please call him?" Rec. Doc. 27-8 at 3. The report states that Shatz told Jarrott over the phone of the news article about Mackey and accompanying photograph, and that "the subject in that photograph was the subject he had seen inside of his bedroom." *Id*. Jarrott's deposition gives more detail. In it, Jarrott recalled that after informing Jarrott of the news article about Mackey, he said he was sure that the person in the photograph was the person who was in his apartment. Rec. Doc. 33-6 at 48-49. During the photograph line-up, Shatz "pointed an index finger at the photograph [of Mackey] and stated 'That's him'". *Id*. at 3. The same police report states that on September 29, 2012, over a week after Jarrott had applied for and obtained a warrant for Mackey's arrest, Jarrott met again with Shatz, who had since spoken to Kohnke about his identification of Mackey. At their second meeting, Shatz explained that he was "not 100% confident that Trent Mackey was the person he had seen in his room." When asked by Jarrott to assign a percentage value to his certainty, he stated, "60 to 70%." *Id*. at 4. Jarrott's declaration essentially attests to these same facts. Rec. Doc. 27-7.

The accounts of Jarrott and Shatz differ most substantially in their recollection of their telephone conversation prior to the photographic lineup. Jarrott's version claims that Shatz said the person shown in the news article (Mackey) was the person he had seen in his apartment. Shatz, on the other hand, says that though he does not remember a word of the conversation, he

7

believes he informed Jarrott only that Mackey's photograph looked similar to the person he had seen in his apartment, and that the article had reported on a robbery across the street from Shatz's apartment. However, both Jarrott and Shatz are in agreement that neither recall Shatz conveying any uncertainty over his identification during the September 19, 2012 photographic lineup. Thus, by both accounts, Jarrott was not on notice that Shatz was only 60 to 70% confident of his identification until their second meeting, which occurred after Jarrott had obtained an arrest warrant.

The Fifth Circuit has previously considered whether identification of a suspect from a photographic array provided a police officer with probable cause to arrest the identified individual. *Mundy v. State of GA*, 586 F.2d 507, 507 (5th Cir. 1978). The court held that even if the photographic array was so impermissibly suggestive as to be inadmissible at trial, the identification, together with other information that placed the suspect in the area of the crimes about the time they occurred, provided ample probable cause to swear out a warrant for his arrest. *Id. See also, Greene v. City of Philadelphia*, No. CIV. A. 97-4264, 1998 WL 254062, *7 (E.D. Pa. 1998) ("The principle that probable cause may be based on a single and reasonably reliable eyewitness identification, even though the identification may be tarnished by discrepancies in the witnesses' description of the perpetrator, is well-established.") (citing *Lallemand v. University of Rhode Island*, 9 F.3d 214, 216 (1st Cir. 1993)). In light of these holdings, it was not unreasonable for Jarrott to conclude that Shatz's identification of Mackey, together with the fact that Mackey had recently been arrested for a crime that occurred in the close vicinity of Shatz's apartment, created probable cause for arrest. Moreover, plaintiff, who bears the burden of showing that Jarrott is not entitled to qualified immunity, has not cited to any law that would show that Jarrott's actions were objectively unreasonable in light of clearly

established law. Accordingly, the Court finds that Jarrott is entitled to qualified immunity, and Mackey's claim against him under §1983 is therefore DISMISSED.

      b. *§1983 claims against Ronal Serpas, in his official capacity, and the City of New Orleans*

Both plaintiff and defendants are in agreement that plaintiff is not bringing a claim of municipal liability under *Monell v. Department of Social Services*, 436 U.S. 658 (1978) against Ronal Serpas in his official capacity or the City of New Orleans. Accordingly, the Court will not address any possible claims against these parties.

      c. *State law claims*

Plaintiffs also bring claims of malicious prosecution, false arrest, and intentional infliction of emotional distress under Louisiana state law. Rec. Doc. 1. However, having granted summary judgment in favor of defendants on plaintiff's sole claim under federal law, the Court declines to exercise supplemental jurisdiction over these remaining state law claims. Under 28 U.S.C. §1367(c)(3), a district court may decline to exercise supplemental jurisdiction over a claim if "the district court has dismissed all claims over which it has original jurisdiction." 28 U.S.C. §1367(c)(2) also allows a district court to decline supplemental jurisdiction if the state law claim "substantially predominates over the claim or claims over which the district court has original jurisdiction. *See also*, *United Mine Workers of Am. V. Gibbs*, 383 U.S. 715, 726 (1996) ("[I]f it appears that the state issues substantially predominate. . . the state claims may be dismissed without prejudice and left for resolution to state tribunals."); *White v. City of Chicago*, Civ. A. No. 11-7802, 2015 WL 225395, *6 (N.D.Ill. 1/15/2015) (declining supplemental jurisdiction over malicious prosecution claim brought under Illinois law after finding police officer entitled to qualified immunity on §1983 claim). Therefore, the Court declines

supplemental jurisdiction over the remaining state law claims and that these claims are DISMISSED WITHOUT PREJUDICE.

Accordingly,

IT IS ORDERED that defendants' Motion for Summary Judgment (Rec. Doc. 27) is GRANTED as to plaintiff's §1983 claim against Jarrott in his individual capacity, and that the claim is hereby DISMISSED WITH PREJUDICE.

IT IS FURTHER ORDERED that the remaining state law claims of malicious prosecution, false arrest, and intentional infliction of emotional distress are DISMISSED WITHOUT PREJUDICE.

IT IS FURTHER ORDERED that judgment of dismissal shall be entered against plaintiff.

New Orleans, Louisiana, this 2nd day of February 2015.

_____
HELEN G. BERRIGAN
UNITED STATES DISTRICT JUDGE